UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


ALICE MCARTHUR                                             PLAINTIFF


VS.                                    CIVIL ACTION NO. 4:04CV186LN


PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY                                          DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on cross-motions of plaintiff
Alice McArthur and defendant Provident Life and Accident Insurance
Company for summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure.  Each party has responded to the other's
motion, so that both motions are now ripe for consideration.  The
court, having considered the parties' arguments and having
reviewed the pertinent evidentiary materials, concludes that
defendant's motion is due to be granted and plaintiff's motion
denied.

This case, and hence the parties' respective motions,
presents the question whether Provident's decision to terminate
payment of long-term disability benefits to plaintiff provided
under her employer's employee welfare benefit plan is supportable.
The basic facts giving rise to the present controversy, as gleaned
from the record, are as follows.

McArthur was formerly employed as a registered nurse by Rush Health Systems.  At the time of her employment, she was covered by a long-term disability plan provided by Rush to its employees, which was funded by a long-term disability policy issued by Provident.  Under the terms of the policy, benefits were payable for the first twenty-four months of a claimed disability if the claimant was disabled from performing her "own occupation." Benefits were payable after that initial twenty-four months if the claimant remained disabled from "any occupation" for which she was or could become suited by education, training or experience.[1]

On September 30, 1999, McArthur was involved in an automobile accident in which she sustained a herniated thoracic disc for

---

[1]   The policy stated as follows:
During the Elimination Period and the Own Occupation Period, TOTAL DISABILITY or TOTALLY DISABLED means that Covered Persons:
1.  are unable to perform on a full-time or part-time basis each of the Important Duties of their Own Occupation because of an Injury or Sickness that started while insured under this Policy;
2.  do not work at all in any occupation; and
3.  are under a Physician's care.

After the Own Occupation Period, Covered Persons will continue to be Totally Disabled if they:

1.  are unable to work at all in any occupation for which they are or may become suited by education, training or experience; and
2.  are under a Physician's care.

If Covered Persons are employed and earning wages or a salary, they will not be considered Totally Disabled and may be considered Residually Disabled subject to the definition below.

which she underwent surgery, a diskectomy, at St. Dominic hospital on October 1, 1999.

On March 7, 2000, McArthur filed a claim with Provident for long-term disability benefits.  Upon review of her medical records, Provident determined that plaintiff was disabled from performing the duties of a registered nurse and paid her benefits during the full twenty-four months of the "own occupation" disability period.  However, on February 4, 2003, it terminated payment of disability benefits upon concluding that plaintiff was not disabled from performing "any occupation."  Plaintiff sought review of that decision, which was denied by decision rendered March 21, 2002.  Plaintiff filed this suit contending that benefits were wrongly terminated.

As a preliminary matter, the parties dispute whether the court's review is de novo or pursuant to an abuse of discretion standard and whether the court's review is limited to the administrative record.  Plaintiff, of course, argues in favor of de novo review and a review which encompasses materials beyond that which is included in the administrative record, suggesting that this is in order by virtue of the fact that in denying benefits, Provident operated under a conflict of interest owing to its role as both insurer and plan administrator.  See Gooden v. Provident Life & Accid. Ins. Co., 250 F.3d 329 (5th Cir. 2001) (holding that because of its role as both the insurer and

3

administrator of long-term disability plan, "Provident operates under a conflict of interest because it 'potentially benefits from every denied claim'"). Provident, on the other hand, maintains that notwithstanding any arguable conflict of interest, the law is nevertheless clear that an abuse of discretion standard applies in light of the fact that the subject plan documents specifically grant it discretionary authority with respect to claims decisions,[2] and that it is clear, as well, that the court's review is limited to the record. The law on these issues is indeed well-established, and clear.

---

[2]    Plaintiff incorrectly states in her motion and memoranda that "[t]he insurer administrator was not vested with discretionary authority." She is patently incorrect. The Plan plainly states:

> If you are not satisfied or do not agree with the reasons for the denial of the claim, you may appeal the decision to the Claims Fiduciary (Provident). It is the intent of the Plan Sponsor (Policyholder) that the Claims Fiduciary shall have the sole and exclusive discretion and authority to carry out all actions involving claims procedures explained in the Policy. The Claims Fiduciary shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any type made by the Claims Fiduciary shall not be disturbed unless the Claims Fiduciary has acted in an arbitrary and capricious manner. Subject to the requirements of law, the Claims Fiduciary shall be the sole judge of the standard of proof required in any claim for benefits. All decisions of the Claims Fiduciary shall be final and binding on all parties. Whenever a decision on a claim is involved, the Claims Fiduciary is given broad discretionary powers, and the Claims Fiduciary shall exercise said powers in a uniform and nondiscriminatory manner in accordance with the Plan's terms.

Since the Supreme Court's decision in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989), it has been settled that a de novo standard of review of an administrator's decision "is appropriate only when the relevant plan provides the administrator with no discretion as to how to apply the benefits." <u>Albert v. Life Ins. Co. of North America</u>, 2005 WL 3271283, *4 n.3 (5th Cir. Dec. 2, 2005). Where, as here, the plan gives the administrator discretion to make claim determinations, "the court must apply an abuse of discretion standard in reviewing the administrator's decision," <u>id</u>. at 2, which standard requires that the administrator's factual determinations be supported by substantial evidence, <u>id</u>. This is the applicable standard in the Fifth Circuit, even in cases where the plan administrator has operated under a conflict of interest, though the existence of a conflict of interest is a factor which bears on the level of deference to be afforded the administrator. The Fifth Circuit refers to this as a "sliding scale approach." <u>Id</u>. at 3 (citing <u>Vega v. Nat'l Life Ins. Servs., Inc.</u>, 188 F.3d 287, 297 (5th Cir. 1999) (en banc)).

> "Under the 'sliding scale' standard, the court always applies the abuse of discretion standard, but gives less deference to the administrator in proportion to the administrator's apparent conflict." [<u>Vega</u>, 188 F.3d] at 296. The <u>Vega</u> court explained that under this approach, where the administrator appears conflicted, a court should be "less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision." <u>Id.</u> at 299.

5

Id.  See also Gooden, 250 F.3d at 333 ("[W]e apply a 'sliding scale standard' and accord Provident's decision less than full deference" where it acted both as insurer and administrator).

The Fifth Circuit has been equally clear on the question of what evidence a court may consider in conducting its review: "[W]hen assessing factual questions, the district court is constrained to the evidence before the plan administrator," Vega, 188 F.3d at 299, even where the administrator had a conflict of interest.

Here, plaintiff argues that because an administrator with a conflict of interest may not be motivated to conduct a thorough investigation and compile a full and adequate record, the court ought not be limited to review of the administrator's record. However, the Fifth Circuit has expressly rejected this position.

In Vega, the district court had held that before limiting itself to the record before the administrator, the court must assure itself that the administrator conducted a reasonable, good faith investigation of the claim, and must be especially cautious when the administrator has an inherent conflict of interest. "'To hold otherwise,'" the court held, "'would restrict the district court to reviewing only those materials before the administrator, even in cases where the administrator conducted an unreasonably lax, bad faith investigation of the facts.'"  Vega, 145 F.3d at 680 (5th Cir. 1998).  On appeal, the Fifth Circuit held that its

6

case law does not support the imposition of any such duty on the administrator.  The court stated:

> [W]e reject this rule and stand by our precedent:  We
> will continue to apply a sliding scale standard to the
> review of administrator's decisions involving a conflict
> of interest.  If we placed a duty on conflicted
> administrators to reasonably investigate, we would be
> adopting [a] presumptively void standard . . . .  In
> effect, we would shift the burden to the administrator
> to prove that it reasonably investigated the claim.  A
> rule that permitted such a result would be at odds with
> the Supreme Court's instruction in <u>Bruch</u> to review such
> determinations under an abuse of discretion standard--a
> standard that demands some deference be given to the
> administrator's decision.
> . . .
>
>      We hold today that, when confronted with a denial
> of benefits by a conflicted administrator, the district
> court may not impose a duty to reasonably investigate on
> the administrator.  Under our own precedent and the
> Supreme Court's ruling in <u>Bruch</u>, we must give deference
> to the administrator's decision.  That the administrator
> decides a claim when conflicted, however, is a relevant
> factor.  In a situation where the administrator is
> conflicted, we will give less deference to the
> administrator's decision.  In such cases, we are less
> likely to make forgiving inferences when confronted with
> a record that arguably does not support the
> administrator's decision.  Although the administrator
> has no duty to contemplate arguments that could be made
> by the claimant, we do expect the administrator's
> decision to be based on evidence, even if disputable,
> that clearly supports the basis for its denial.

<u>Vega</u>, 188 F.3d at 298-299 ("[W]e will not permit the district court or our own panels to consider evidence introduced to resolve factual disputes with respect to the merits of the claim when that evidence was not in the administrative record."); <u>see also</u> <u>Albert</u>, 2005 WL 3271283, at *3 (while the court may look beyond the administrative to determine whether a conflict of interest

7

existed, "a court remains bound to consider only material from the administrative record in determining whether an administrator abused the discretion afforded.").

In the court's opinion, a review of the administrative record in the case at bar reveals substantial evidence for Provident's decision to discontinue disability payments under the "any occupation" coverage afforded at the conclusion of the initial "own occupation" disability period. This decision was made in February 2002. At that time, the most recent Attending Physician's Statement before Provident was dated November 27, 2001, and was completed by plaintiff's treating physician, Dr. James Matthews. Therein, Dr. Matthews checked the box "Yes" in response to both questions whether the patient was "disabled from "Plaintiff's Occupation" and from "Any Other Work," and he indicated in that same section that the only activity the patient was "INCAPABLE OF PERFORMING" was "lifting." At the same time, he checked the box "Light work (20 lbs. lifting maximum)" in response to the inquiry as to the patient's "Work Capacity;" he indicated that there was but a "Moderate impairment" to her range of motion; and he responded "Yes" to the question whether the patient could be rehabilitated into her occupation as a registered nurse.

In addition to the information provided by Dr. Matthews, plaintiff's claim was reviewed by one of Provident's in-house physicians, Dr. Lance Matheny, who concluded that in addition to

the twenty-pound lifting restriction imposed by Dr. Matthews, there could be other limitations, including bending or twisting, extreme or unusual positioning, prolonged standing or walking, the ability to change position periodically, walking on uneven surfaces and working at unprotected heights.

Provident then obtained a Transferable Skills Analysis which took into account the limitations noted by Drs. Matthews and Matheny, along with plaintiff's education, training and experience, on the basis of all of which it was determined that there were a number of occupations plaintiff was qualified and able to perform, including office nurse, optometric assistant, surgical technician and cardiac monitor technician.  Accordingly, it concluded that she did not continue to be disabled.

In the court's opinion, this evidence upon which Provident relied in discontinuing disability payments is sufficient to support its decision, and the record does not support a finding that it abused its discretion in reaching this conclusion.  For her part, while plaintiff argues that there is conflicting evidence in the administrative record as to the extent of her claimed disability, in support of her own motion and in response to Provident's motion for summary judgment, she points to nothing in the administrative record that might reasonably lead to a conclusion that Provident acted arbitrarily or capriciously in refusing further benefits.

Plaintiff does refer to evidence extraneous to the administrative record in urging the court to overturn Provident's decision.  Specifically, she advises that she underwent back surgery on April 18, 2002, following which she suffered an infection of her incision beginning in early May 2002, which caused her to be incapacitated and eventually led to her being hospitalized for eight days.  This evidence, however, is irrelevant for a number of reasons.  First and foremost, such evidence is not part of the administrative record and thus is not properly before the court for consideration.  That alone is a sufficient basis for rejecting this information, but there are other reasons.  For example, the period of disability from plaintiff's "own occupation" ended at the latest in February 2001 so that unless plaintiff met the definition of disability from "any occupation" in February 2001, she would not have been entitled to continuation of disability benefits.  She thus could not have become entitled to disability benefits under the policy based on conditions that first arose months after her original disability period had ended even if she, in fact, experienced disability as a result of surgery that occurred <u>after</u> the time she was found not disabled.

Finally, as defendant correctly observes, while plaintiff includes information about this April 2002 surgery and its aftermath in her brief, she has offered no evidence relating to

the surgery, and certainly no proof that the effects of the surgery would have entitled her to long-term disability benefits under the terms of the plan.

Plaintiff has also submitted affidavits from her and from Dr. Matthews in which both assert that plaintiff remains disabled. This evidence is not competent proof.  Plaintiff's professed belief that she is disabled is entitled to no weight, and neither is Dr. Matthews' in the circumstances presented.  See Gooden, 250 F.3d at 333 (holding that letter from physician stating that claimant was disabled "does not undermine Provident's decision, as it was written after Gooden learned he was being terminated, and was unaccompanied by medical evidence indicating that Gooden's condition changed since the last time Dr. Causey had seen Gooden.").

Based on the foregoing, it is ordered that Provident's motion for summary judgment is granted, and plaintiff's motion is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 20th day of December, 2005.


                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT JUDGE